**Jamil EDWARDS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 295, 2006.

Supreme Court of Delaware.

Submitted: Feb. 21, 2007.
Decided: April 17, 2007.

---

Nicole M. Walker, Office of Public Defender, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

STEELE, Chief Justice:

A New Castle County Grand Jury indicted and the State tried Jamil Edwards on one count of Murder First Degree of Robert Johnson and one count of Possession of a Firearm During the Commission of a Felony. While incarcerated, Edwards and two other prisoners, Michael Mude and Rachine Garnett, were cellmates. As a State witness at trial, Mude testified that in the presence of Garnett, Edwards admitted that he shot Johnson because Johnson was stealing his drug customers. Edwards then called Garnett, who was also present during the conversation, to testify about his recollection of the conversation. The trial judge, however, limited Garnett's testimony and did not permit him to testify that he did not hear Edwards admit to killing Robert Johnson, or that in the same conversation to which Mude referred, Edwards actually denied killing Johnson. A Superior Court jury convicted Edwards on both counts. The trial judge sentenced Edwards to life imprisonment for the murder conviction and three additional years for the PFDCF conviction.

Edwards appeals his conviction and argues that the trial judge abused her discretion when she prevented him from impeaching Mude's statements with Garnett's testimony. After consideration of the record, we conclude that the trial judge abused her discretion by limiting Garnett's testimony. We respectfully disagree with the trial judge's ruling that Garnett's testimony about Edwards' out of court statement constituted hearsay because Edwards did not offer the statement for the truth of the matter under D.R.E. 801. The defense proffered Garnett's testimony to contradict and thus to impeach Mude's statement under D.R.E. 607. Excluding this evidence denied Edward's substantial right to impeach Mude, a key witness for the prosecution. Accordingly, we reverse.

## FACTS AND PROCEDURAL HISTORY

On February 13, 2004, police arrived at Bethel Village Apartments and found the body of Robert Johnson, a local drug dealer. Hours later, police located Timothy Davis, a convicted felon, who told the police that he had been with Johnson and Edwards at the apartments earlier that day and heard them arguing about their respective drug businesses. Davis[1] told the police that Edwards left the apartments after the argument but returned an hour later with Jamil Chapman. Chapman walked up the steps to an unidentified apartment while Edwards, Davis, and Johnson remained in a hall. Davis stated that he heard a gunshot and assumed Edwards shot Johnson because Davis stated he did not shoot Johnson and he believed Chapman had gone upstairs. Davis did not see Edwards with a weapon.[2]

At trial, the State called Mude. Mude testified that in their prison cell in Garnett's presence, Edwards admitted that he shot Johnson because Johnson was stealing his drug customers. During cross examination, Mude admitted prejudice towards African Americans.[3] Mude testified

---

1. In exchange for Davis's testimony at trial, the State offered him a plea for simple possession (misdemeanor) although his original charges were possession with intent to deliver a narcotic (felony), criminal impersonation, and possession of drug paraphernalia.

2. Davis also testified that he was under the influence of marijuana that day.

3. Edwards is an African American. Mude is Caucasian.

that the State dropped several charges against him after he gave a statement to police incriminating Edwards.[4] Mude also testified that after he gave his statements about the Edwards' conversation, the State released him from prison even though a Superior Court judge had previously denied his motion seeking an early release.

Edwards then called Garnett to testify about his recollection of the jail cell conversation. The State objected and argued:

Mr. Edwards is the State's party-opponent. The State would normally get to introduce any statements of Mr. Edwards. [Defense counsel] is trying to introduce his own client's statement. He is not a party opponent. It is still hearsay. With the party-opponent rule we get to put this statement in, but the defense does not get to.

The State further argued that admitting Garnett's version of Edwards's statement would deny the State the opportunity to cross examine Edwards about the statement because Edwards would not testify. In response, Edwards argued that he proffered Garnett's testimony to impeach Mude's credibility, not to prove that Edwards did not shoot Johnson. At sidebar, defense counsel proffered that Garnett would testify "that [Edwards] never admitted to shooting [Johnson]. In fact, [Edwards] denied it." The trial judge initially agreed with defense counsel; however, after further discussion, she concluded that she wanted briefing on the issue. After considering the parties' briefs, the trial judge stated that "the court was wrong" and sustained the State's objection. The trial judge relied upon *John Smith v. State*[5] and *Frederick Smith v. State*[6]:

This is, in my opinion, inadmissible hearsay and I appreciate that [the State and Defense counsel] were able to provide me with cases. I am not convinced that [Garnett's statements denying that Edwards admitted murdering Johnson are] being admitted for the truth of the matter involved as it is being admitted specifically and precisely to refute the testimony of Mr. Mude. So under the circumstances I will not permit you to ask questions of this witness that will elicit inadmissible hearsay concerning the defendant's statements.[7]

The jury convicted Edwards of Robert Johnson's Murder and PFDCF.

## DISCUSSION

 We review a trial judge's decision about the admissibility of evidence for an abuse of discretion.[8] A trial judge abuses his discretion when the judge "has ... exceeded the bounds of reason in view of the circumstances, [or] ... so ignored recognized rules of law or practice so as to produce injustice."[9] Where defendant's appeal

is grounded on allegations that the [trial judge] erred as a matter of law or abused his discretion in submitting claims to the jury and in admitting certain evidence, [we] will first consider

---

4. On cross examination, Mude testified that the State dropped the following charges: escape second, carrying a concealed deadly weapon, harassment, receiving stolen property. Defense counsel later called Peter Letang, prosecutor for the Attorney General's office, who testified that the State did not go forward with the escape charge and a weapons charge because Mude had provided the State with information regarding Edwards.

5. 647 A.2d 1083 (Del.1994).

6. 669 A.2d 1 (Del.1995).

7. Tr. Mar. 3, 2006 at 3:6–18.

8. *McGriff v. State*, 781 A.2d 534, 537 (Del. 2001).

9. *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994) (citing *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del.1988)).

whether the specific rulings at issue were correct. If [we] find error or abuse of discretion in the rulings, [we] must then determine whether the mistakes constituted significant prejudice so as to have denied the appellant a fair trial.[10]

■ Even where there is error, we must "weigh the significance of the error against the strength of the untainted evidence of guilt to determine whether the error may have affected the judgment"[11] and determine whether the error constituted harmless error beyond a reasonable doubt.[12] Though the State did not raise harmless error in its brief, we may elect *sua sponte* to address that issue.[13]

■ Edwards argues that the trial judge abused her discretion when she prevented him from impeaching Mude's statements. Edwards argues that the trial judge erred by limiting Garnett's testimony about Edward's out of court statement because he planned to use the statement solely to impeach Mude's credibility under D.R.E. 607; he did not attempt to introduce Garnett's testimony for substantive purposes. Edwards contends that the statement does not fit within the definition of hearsay under D.R.E. 801 because he did not offer it to prove that Edwards did not shoot Johnson.

Rules 402[14] and 403[15] control the admission of evidence offered to show contradiction.[16] Rule 402 allows a trial judge to admit all relevant evidence except where a statute or the Rules of Evidence bar the evidence.[17] Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[18] Even where evidence is relevant, however, a trial judge may exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."[19]

■ Under D.R.E. 801(c), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[20] Where a statement is hearsay, the Delaware Rules of Evidence prohibit the admission of the statement unless an applicable exception

10. *Charbonneau*, 904 A.2d at 304 (citing *Strauss v. Biggs*, 525 A.2d 992, 997 (Del. 1987)).

11. *John Smith v. State*, 647 A.2d 1083, 1090–91 (Del.1994) (citing *Van Arsdall v. State*, 524 A.2d 3, 11 (Del.1987)).

12. *Smith*, 647 A.2d at 1090–91.

13. *Hassan–El v. State*, 911 A.2d 385, 398 (Del. 2006) (citing *U.S. v. McLaughlin*, 126 F.3d 130, 135 (3d Cir.1997)).

14. D.R.E. 402. Rule 402 states: "All relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible." *Id.*

15. *Id.* at 403. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *Id.*

16. *Smith v. State*, 913 A.2d 1197, 1232 (Del. 2006).

17. D.R.E. 402.

18. *Id.* at 401.

19. *Id.* at 403.

20. D.R.E. 801(c).

applies.[21] Where "the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay."[22]

In *Dutton v. Evans*,[23] the U.S. Supreme Court addressed a situation similar to the present case. The Court held that Evans, the defendant, could offer witnesses to rebut testimony offered by Shaw to determine whether Shaw had the specific conversation referenced in his testimony:

> Neither a hearsay nor a confrontation question would arise had Shaw's testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.[24]

The Court further added that Evans, even though he chose not to do so, had the right to subpoena witnesses "whose testimony might show that the statement had not been made."[25]

In the present case, the State relied upon a sole witness—Mude—to offer testimony that Edwards admitted murdering Johnson. While Davis testified that Edwards was the shooter, Davis' credibility was in question because the jury heard that: He did not see Edwards with a weapon;[26] Davis had self-interest in denying involvement in the crime (i.e. to avoid prison); Davis was high at the time of the incident;[27] and Davis could avoid a violation of probation and a possession of cocaine with intent to deliver charges in exchange for his testimony. Thus, Mude's testimony was, at least arguably, one of the State's most important pieces of evidence against Edwards.

Just as in *Dutton*, Garnett's testimony would not constitute hearsay because Edwards did not offer Garnett's version of the conversation to establish that Edwards did not kill Johnson. Rather, Edwards offered the testimony solely to impeach Mude's credibility. Furthermore, a jury could reasonably believe that Mude had a significant motive to lie and testify favorably for the State: Mude disliked African Americans, and the State dropped pending charges against Mude and released Mude from prison in exchange for his testimony. Thus, Garnett's testimony challenging Mude's version of the three way conversation could have had a significant effect on the outcome of the case.

Similarly in *North Carolina v. Lytch*,[28] the State offered testimony from the defendant's cell mate, Lucas Ismond, that the defendant admitted killing two people.[29] Then the defendant attempted to

21. *Id.* at 802.

22. *U.S. v. Saada*, 212 F.3d 210, 218 n. 8 (3d Cir.2000) (citing FED.R.EVID. 801(c) advisory committee's note). Federal Rule of Evidence 801(c) is identical to Delaware Rule of Evidence 801(c).

23. 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

24. *Dutton*, 400 U.S. at 88, 91 S.Ct. 210.

25. *Id.* at 88 n. 19, 91 S.Ct. 210.

26. The State suggests the weakness in Davis's testimony, noting that "[w]hile he did not see Edwards shoot Johnson, Davis noted that there were only three individuals in the hallway and he did not shoot Johnson." Appellee's Answering Brief at 4.

27. During cross-examination, Davis admitted to having smoked seven or eight blunts (cigars with the tobacco removed and replaced with marijuana) between 9:00 a.m. and 2:00 p.m. He admitted that he felt "woozy in the head."

28. 142 N.C.App. 576, 544 S.E.2d 570 (2001).

29. *Id.* at 585, 544 S.E.2d 570.

introduce testimony of another cellmate, Mitchell Quarterman, to refute the State witness's testimony.[30] Despite sustaining the State's hearsay objections against statements made by Quarterman to Ismond, the trial judge allowed the substance of the information to come in by permitting Quarterman to testify about writings he made for the defendant's case, as well as jokes and discussions the inmates had about the defendant's case.[31] The North Carolina Court of Appeals held:

> Because the trial court in the instant case admitted the substance of the proffered testimony, there was no prejudice to defendant; even though certain specific statements were excluded, "no prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence." Given that the trial judge allowed the essential information proffered by defendant into evidence, we conclude that there was no prejudice in excluding the statements to which objections were sustained.[32]

In this case, unlike the situation in *Lytch*, the trial judge denied Edwards the ability to offer the essential evidence that suggested that Mude may have lied about hearing Edwards' alleged admissions. Edwards made a proper proffer and argument in support of admitting Garnett's testimony. Edwards's counsel and prosecutors met with the trial judge at a side bar conference and briefed the issue for the trial judge's consideration to determine whether Garnett's testimony should be admitted. Garnett's testimony is relevant to refute Mude's testimony about Edwards's alleged admissions. The trial judge's ruling, however, denying Edwards the chance to introduce evidence contradicting Mude's testimony, prevented Edwards from arguing to the jury that another person present at the time of Edwards' alleged incriminating statements heard nothing of the kind related by Mude and that Mude's version was at best inaccurate and at worse, a lie.

When she sustained the State's objection, the trial judge relied upon *John Smith v. State* and *Frederick Smith v. State*. In *John Smith*, Mrs. Weedon called the police and told them that her husband, William Weedon, Jr., and John Smith, attacked Ward, the victim, with a baseball bat after Mrs. Weedon told her husband (Mr. Weedon) that their daughter alleged that Ward had molested her.[33] At trial, John Smith testified and presented an alibi.[34] Though Mr. Weedon did not testify, Mrs. Weedon testified about her conversation with the police, as well as a conversation she had with Mr. Weedon a day later in which he admitted to attacking Ward with Smith.[35] On appeal, citing the U.S. Supreme Court's decision in *Williamson v. U.S.*,[36] this Court construed Rule 804(b)(3)[37] to mean that "[n]on-self-incrim-

30. *Id.*

31. *Id.*

32. *Id.* (quoting *State v. Hageman*, 307 N.C. 1, 296 S.E.2d 433, 446 (1982); *see also State v. Burke*, 342 N.C. 113, 463 S.E.2d 212, 217 (1995)).

33. *John Smith*, 647 A.2d at 1085.

34. *Id.*

35. *Id.*

36. 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

37. D.R.E. 804(b)(3). Rule 804(b)(3) permits a hearsay statement against interest. *Id.* Specifically, a statement against interest is:

> A statement which was, at the time of its making, so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate

inatory components of a declaration purportedly falling within D.R.E. 804(b)(3) are presumptively inadmissible hearsay because they cannot claim any special guarantees of reliability and trustworthiness."[38] As a result, we held that the trial judge committed error when he did not distill Mrs. Weedon's testimony to remove the non-self-inculpatory statements that "lacked significant indicia of reliability and trustworthiness" from the self-incriminating parts that applied to Weedon alone.[39]

In *Frederick Smith v. State*, Frederick Smith accused his fiancée Anderson of cheating on him, and he raped her.[40] Anderson called the police and gave them a videotaped report detailing the events of the rape.[41] At trial, Anderson testified that Smith had not raped her, but she admitted to other incidents of abuse.[42] After a jury convicted Frederick Smith, he appealed and sought to introduce a statement accusing his fiancée Anderson of pulling a knife on him that he had made to police under Rule 801(d)(2)[43] as a party-opponent admission.[44] This Court upheld the trial judge's ruling that the statement

was inadmissible hearsay because the self-serving statement "was offered in Smith's defense" and was not "offered *against* the party."[45]

In the present case, the trial judge applied *John Smith* and *Frederick Smith* incorrectly.[46] Unlike the testimony at issue in *John Smith*, Edwards did not seek to admit Garnett's testimony to impeach Mude under Rule 804(b)(3). More importantly, unlike Mrs. Weedon, Garnett would not testify to inculpate or exculpate Edwards; rather, Garnett's testimony would serve only to contradict Mude's recollection of events and allow the jury to better assess Mude's credibility as a witness. Thus, the trial judge would not need to distill any of Garnett's testimony.

Similarly, unlike Smith in *Frederick Smith*, Edwards did not seek to offer Garnett's testimony under Rule 801(d)(2) as a party-opponent admission; rather, Edwards sought to offer Garnett's testimony to impeach Mude and create doubt about Mude's credibility. While Garnett's statement denying that Edwards admitted involvement in the murder is arguably simi-

---

the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
*Id.*

**38.** *John Smith*, 647 A.2d at 1088.

**39.** *Id.* at 1088, 1090.

**40.** *Frederick Smith*, 669 A.2d at 3.

**41.** *Id.*

**42.** *Id.*

**43.** D.R.E. 801(d)(2). An admission by a party-opponent is a statement
offered against a party and is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a

matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy; provided that the conspiracy has first been established by the preponderance of the evidence to the satisfaction of the court.
*Id.*

**44.** *Frederick Smith*, 669 A.2d at 4. Smith also raised other grounds for reversal on appeal that are irrelevant here.

**45.** *Id.* (emphasis in original).

**46.** The record does not disclose whether the trial judge evaluated Garnett's proffered testimony under Rules 402 and 403. *See Smith v. State*, 913 A.2d 1197, 1232 (Del.2006) ("When impeachment evidence is offered to show ... contradiction ... the admissibility of that evidence is controlled by D.R.E. 402 and 403.").

lar to Smith's statement to show Smith's innocent of rape, Smith sought to offer the statement substantively to create a defense; Edwards, on the other hand, sought to offer Garnett's testimony to contradict Mude's recollection of the three way conversation and not to offer an exculpatory, substantive defense. As a result, *John Smith* and *Frederick Smith* are distinguishable from the present case.

The State relies on *U.S. v. Sebetich*[47] in support of the trial judge's ruling. In *Sebetich*, the defendants sought to introduce evidence that Chester Sala, who was not a defendant, committed the crime by having Agnes Williams and her son testify that they heard Sala state his plans to rob a bank.[48] After analyzing the statements, the Court refused to allow the defendants to call them to impeach Sala's credibility because the defendants' only reason to call Sala was to have Sala's prior inconsistent statements placed before the jury through the Williams' testimony which would allow the defendants to advance their substantive theory that Sala committed the robberies.[49] Calling Sala to place prior inconsistent statements to the jury through the Williams' testimony, however, would circumvent the hearsay rules through Rule 607 and be improper.[50]

The United States Court of Appeals for the Third Circuit, however, later distinguished *Sebetich*, in *Goodman v. Pennsylvania Turnpike Commission.*[51] In *Goodman*, Goodman, a public employee, brought an action against his employer, Pennsylvania Turnpike Commission, alleging that they did not promote him to manager position due to his political affiliation.[52] The Commission had promoted Becker, who had not received as high a score as Goodman in their respective interviews but had a different political affiliation than Goodman.[53] Goodman claimed that the Commission promoted Becker over him because Becker had political support from Senator Rhoades and his aide, Clyde Holman.[54]

At trial, Becker testified that he learned of his promotion from his boss, Sadler.[55] Becker specifically stated that he did not hear of the promotion from Holman and denied ever telling Goodman that he heard about his promotion from Holman.[56] Holman also denied that he and Becker ever had such a conversation.[57] To impeach Becker's testimony, Goodman then testified that Becker told him that Becker had received a call from Holman indicating that he (Becker) would be promoted.[58] The trial judge also allowed Goodman's father to testify that Holman had told him that Senator Rhoades was responsible for Becker's promotion over Goodman.[59] On appeal, the Commission argued that the statements were inadmissible hearsay of-

47. 776 F.2d 412 (3d Cir.1985).

48. *Sebetich,* 776 F.2d at 427–28.

49. *Id.* at 428.

50. *Id.* at 428–29. Rule 607 states "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." FED.R.EVID. 607. Delaware Rule of Evidence 607 is substantially identical. *See* D.R.E. 607 ("The credibility of a witness may be attacked by any party, including the party calling him.").

51. 293 F.3d 655 (3d Cir.2002).

52. *Id.* at 661.

53. *Id.* at 660.

54. *Id.* at 661.

55. *Id.* at 662.

56. *Id.*

57. *Goodman,* 293 F.3d at 662.

58. *Id.*

59. *Id.*

fered for the truth of the matter. Goodman argued that the statements were not hearsay and were admissible under Federal Rule of Evidence 607. The Court affirmed the lower court decision and stated:

> these statements should not be deemed hearsay.... It made sense for Goodman to introduce the statements for this purpose [to impeach Becker]. Regardless whether Holman actually told Becker about his promotion, and regardless whether Senator Rhoades was in fact "to blame" for the promotion, witnesses who make such statements and later deny them tend to lack credibility, and may be impeached on that ground. Thus, the statements are direct evidence by which the jury could assess Becker's and Holman's truthfulness. In this case they were not introduced "to prove the truth of the matter asserted" and therefore lack the defining characteristic of hearsay under the Federal Rules.[60]

The Court also distinguished *Sebetich:*

> But Sebetich does not apply to this case. Sebetich and his codefendants were trying to admit Sala's statements for substantive purposes under a hearsay exception at the same time they were ostensibly proposing to admit it for "impeachment" purposes under Rule 607. It was obvious that their intent was to place the substance of the statement before the jury.... In addition, unlike here, the attempt to admit the putative impeachment evidence in *Sebetich* lacked credibility on its face because Sala was otherwise uninvolved in the case and his credibility therefore did not matter.[61]

Similar to *Goodman,* the present case is also distinguishable from *Sebetich.* Unlike *Sebetich,* where "[i]t was obvious that [defendants'] intent was to place the substance of the statement before the jury,"[62] Edwards did not call Garnett to present substantive evidence to the jury that he did not kill Johnson. Rather, Edwards called Garnett (1) to rebut Mude's testimony by stating, from his own recollection,[63] that Edwards never admitted to killing Johnson and in fact denied it, and (2) to impeach Mude's credibility by offering a different version of the events surrounding Edwards's statement. Furthermore, Mude's testimony in the present case was critical to the State's case, unlike Sala's insignificant testimony in *Sebetich.* Moreover, unlike the defendants in *Sebetich,* Edwards sought to call Garnett in good faith.[64]

■ By limiting Garnett's testimony, the trial judge denied Edwards' opportunity to impeach Mude's credibility. Garnett's testimony about Edwards' out of

---

60. *Id.* at 666 (citations omitted). *See also Gehr v. State,* 765 A.2d 951 (Del.2000) ("The doctor's statement was not hearsay because the State did not offer the statement to prove the truth of the matter asserted. Rather, the State offered the statement for the purpose of impeaching witness testimony."); *Hendricks v. State,* 805 A.2d 902 (Del.2002) ("The statement made by the guard identifying Griffith as an informant did not constitute 'hearsay.' ... The State did not introduce the guard's statement to establish that Griffith in fact informed on the defendant [the truth of the matter asserted], but to show the defendant's motive for the alleged attack.").

61. *Goodman,* 293 F.3d at 666–67.

62. *Goodman,* 293 F.3d at 667 (3d Cir.2002) (citing *Sebetich,* 776 F.2d at 428).

63. Notably, in *Goodman,* the Court noted that testimony by the witness would not be hearsay because the witness "experienced it firsthand." *Id.* at 667 n. 8. Similarly, Garnett experienced firsthand whether Johnson admitted killing Johnson or not.

64. *Id.* at 667 (citing *U.S. v. Webster,* 734 F.2d 1191, 1192 (7th Cir.1984)) (permitting evidence for impeachment purposes, despite defendant's claim that statements were hearsay, because the prosecutor acted in good faith).

 

court statement is not hearsay because Edwards did not offer the statement for the truth of the matter under D.R.E. 801. Edwards did not offer the statement to prove that he did not shoot Johnson; rather, the defense offered Edwards' testimony to contradict and thus to impeach Mude's statement under D.R.E. 607. Garnett's testimony was critical to Edward's case because there were no eyewitnesses to the crime. Also, Davis and Mude arguably had suspect motives to testify for the State. Edwards's alleged admission of involvement in the crime was a material fact in the case, and the trial judge abused her discretion when she denied Edwards the opportunity to call Garnett to impeach Mude. Mude's uncontradicted testimony about Edward's admissions was the only "direct evidence linking [Edwards] to com-mission of the subject offenses." [65] If the trial judge had permitted Garnett to testify and the jury chose not to believe Mude, the only other evidence linking Edwards to the crime was Davis's self interested, exculpatory testimony. As a result, there can be little doubt that Mude's testimony, standing uncontradicted, contributed significantly to Edwards's conviction. Thus, the error could not be harmless beyond a reasonable doubt.

### Conclusion

For these reasons, the judgment of the Superior Court is **REVERSED**.

---

**65.** *John Smith,* 647 A.2d at 1091.