AARON ARCHY, Defendant Below-Appellant
v.
STATE OF DELAWARE Plaintiff Below-Appellee.
No. 423, 2008
Supreme Court of Delaware
Submitted: June 4, 2009
Decided: July 6, 2009
Before STEELE, Chief Justice, HOLLAND, and RIDGELY, Justices

ORDER
HENRY DuPONT RIDGELY, Justice
This 6th day of July 2009, upon consideration of the briefs of the parties and their contentions at oral argument, it appears to the Court that:
(1) Defendant-Appellant Aaron Archy appeals his Superior Court convictions of murder in the first degree, possession of a firearm during the commission of a felony, and possession of a firearm by a person prohibited. Archy raises two issues on appeal. First, he contends that the court erred by permitting the State to reference an alleged hearsay statement made within a statement admitted under 11 Del. C § 3507. Second, he contends that the trial judge erred by limiting his cross-examination of a key State witness as to the existence of drugs and ammunition found in that witness's residence following the shooting. We find no merit to Archy's arguments and affirm.
(2) On November 22, 2005, Archy met with Tiron Warrington and Matthew Hall on the front steps of Warrington's mother's house, located in the 1300 block of East 27th Street in the Riverside Housing Project in Wilmington. While there, Warrington made several sales of heroin. Later, two other men joined the group, and the five men continued to congregate near the front of the house.
(3) Luis Perez, another drug dealer, appeared at the intersection of East 27th and Claymont Streets and walked passed the group towards Bowers Street.[1] As he passed, he called out a greeting, and Archy, also known as "A-Rod" responded in a friendly manner and then walked with him down East 27th Street towards Bowers Street. The two men turned left at Bowers Street and walked out of sight from the rest of the group. A few seconds later, a gunshot was heard. Warrington testified that he and Hall ran to the courtyard behind the row of houses, saw Perez on the ground, and saw Archy walking in their direction.
(4) During their investigation of Perez's death, police found a .380 caliber cartridge casing near Perez's foot. An autopsy revealed that Perez had been shot once, at close range, in the right side of his head. Upon removal, the bullet was determined to be .380 caliber. On December 3, 2005, police executed a search warrant for the Warrington household. During the search, police found heroin and twelve rounds of nine millimeter ammunition. Warrington's sister was indicted for possession of these items and later pled guilty to possession of heroin.
(5) In a statement made to police on December 5, 2005, Warrington recounted that as Perez walked down East 27th Street, he shouted a greeting to Archy, saying: "Is that Dusty Ass A-Rod?" Prior to trial, Archy moved in limine to exclude evidence of the remark on hearsay grounds.[2] He also objected on Confrontation Clause grounds, arguing that the remark was inadmissible under Crawford v. Washington.[3] The trial judge denied the motion, finding that the statement was nontestimonial, and thus, not subject to Crawford. Additionally, the trial judge found that the statement was either not hearsay or admissible under the "present sense impression" exception to the rule against hearsay.
(6) At trial, Archy sought to cross-examine Warrington regarding the ammunition and drugs recovered from his mother's house. Following the State's objection, the trial judge limited the scope of the defense inquiry. Defense counsel was permitted to ask Warrington if, on December 5, he had any heroin, guns, or ammunition at his mother's house. A similar issue arose while defense counsel was cross-examining Warrington's girlfriend. The trial judge again limited the scope of the defense questioning. The prosecution then moved to preclude any questions regarding the items found as a result of the December 3 search. The trial judge granted the motion on relevancy grounds.
(7) Archy's first trial resulted in a hung jury. At the beginning of the retrial, counsel preserved all objections made at the first trial. On May 6, 2008, the jury returned a verdict of guilty on all charges. This appeal followed.
(8) Archy first contends that the Superior Court abused its discretion when it allowed the State to admit Warrington's statement to the police which contained Perez's statement: "Hey, is that dusty-ass A-Rod?" Archy argues that this statement is hearsay because he "was unable to cross-examine Perez about the content of the statement or whether or not [Perez had] made the statement."
(9) We review a trial judge's decision about the admissibility of evidence for abuse of discretion.[4] An abuse of discretion arises when the trial judge "has . . . exceeded the bounds of reason in view of the circumstances, [or] . . . so ignored recognized rules of law or practice so as to produce injustice."[5] We have outlined a two-step analysis to be applied when the "defendant's appeal is grounded on allegations that the [trial judge] erred as a matter of law or abused his discretion in submitting claims to the jury and in admitting certain evidence."[6] "[We] will first consider whether the specific rulings at issue were correct. If [we] find error or abuse of discretion in the rulings, [we] must then determine whether the mistakes constituted significant prejudice so as to have denied the appellant a fair trial."[7] Any claims arising from alleged constitutional violations are reviewed de novo.[8]
(10) Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[9] A statement may either be "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion."[10] Although "assertion" is not defined, many courts have refused to recognize questions as statements.[11] If a statement is deemed hearsay, its admission is prohibited by the Delaware Rules of Evidence unless an applicable exception applies.[12] "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule...."[13]
(11) In this case, the outer layer of hearsay (Warrington's out-of-court statement to the police) was admissible under 11 De. C. § 3507. Section 3507(a) provides that "[i]n a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value." Here, Warrington voluntarily related Perez's greeting to Archy during a statement to police. He testified at Archy's trial and was subject to cross-examination.[14]
(12) The inner-layer of hearsay (Perez's greeting) was also admissible. Assuming, arguendo, that Perez's greeting was an assertion that Archy was present, it was admissible under the "present sense impression" exception to the hearsay rule. A "present sense impression" is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."[15] In Derrickson v. State,[16] we explained that a present sense impression may be admitted if the statement: (1) is relevant and material; (2) relates to an existing state of mind when made; (3) is made in a natural manner; (4) is made under circumstances dispelling suspicion; and (5) does not contain any suggestion of sinister motives.
(13) Here, Perez's statement was relevant and material in that it tended to establish that Perez knew Archy. In addition, it relates to a then-existing state of mind and was made in a natural manner as it was uttered as a greeting when Perez approached a group of people he thought might include Archy. Finally, it was made under circumstances dispelling suspicion and does not contain any suggestion of sinister motives. Although the trial judge did not address each factor individually, he determined that "the statement described or explained an event or condition while declarant was perceiving the event, or condition, or immediately thereafter." The statement was admissible under Rule 803(1).
(14) Although the statement was admissible under the Delaware Rules of Evidence, its admission must not run afoul of the Sixth Amendment of the United States Constitution, which requires that "[I]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[17] In Crawford v. Washington,[18] the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." A statement is testimonial when "the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[19]
(15) Archy argues that his right to confrontation was violated because he could not confront Perez and question him about the greeting. This argument lacks merit. In Jones v. State,[20] we held that:
Page's statements were nontestimonial in nature because they were casual remarks made to his girlfriend (Still). Although Still revealed these statements in a testimonial setting, this did not change the nature of Page's statements to her . . . Page's nontestimonial statements to Still are subject only to our State's hearsay rules because they do not implicate the Confrontation Clause.
(16) As in Jones, and as Archy's counsel conceded during oral argument, Perez's greeting to Archy was nontestimonial in nature, and therefore, did not implicate the Confrontation Clause. Perez's alleged statement was a casual remark, even though Warrington later recounted it in a testimonial setting. As a result, the statement was nontestimonial and not barred by the Confrontation Clause.
(17) Archy next contends that the Superior Court abused its discretion when it refused to permit him to refer to the ammunition and drugs found by police in the Warrington household.[21] He argues that such evidence was admissible because it touched on Warrington's factual credibility and his motive to lie. Specifically, Archy sought to use the presence of ammunition to contradict Warrington's testimony that he did not have a gun and to suggest to the jury that Warrington was a suspect. He sought to use the presence of drugs to establish that Warrington and Perez were competing drug dealers, which, in turn, established Warrington's motive to kill Perez. In addition, Archy argues that the presence of the drugs and ammunition together established that Warrington was "a law breaker and a violent person."
(18) In Martin v. State,[22] we held that "there is a wide discretion given to counsel during cross-examination as he tests, among other things, the credibility of a witness . . ." Similarly, in Atkinson v. State,[23] we held that "[e]ffective cross-examination is essential to a defendant's right to a fair trial. It is the principal means by which the believability of a witness and the truth of [his] testimony are tested. In Delaware, the jury is the sole trier of fact, responsible for determining witness credibility and resolving conflicts in testimony . . . [j]urors should be afforded every opportunity to hear impeachment evidence that may undermine a witness' credibility."
(19) Delaware Rule of Evidence 401 defines relevant evidence as "evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[24] "Evidence which is not relevant is not admissible."[25] Even if evidence is relevant, pursuant to Delaware Rule of Evidence 403, such evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.[26]
(20) Here, Archy wished to introduce the nine millimeter ammunition found in the Warrington household for two reasons. First, to further question Warrington regarding his use of a gun the night before the murder to attack his credibility. Second, to suggest to the jury that Warrington was a suspect based on ammunition found in his mother's house, and the proposition that certain models of nine millimeter weapons could fire .380 caliber ammunition and that the .380 caliber cartridge recovered from Perez could have been fired from a nine millimeter weapon. Because no weapon had been found in the search of the Warrington house, the trial judge concluded that the defense had not established a sufficient nexus to connect the ammunition found in the search conducted two weeks after the murder to the bullet found in Perez.
(21) The trial judge properly excluded the evidence under Rule 403. First, on the issue of whether Warrington had possessed a gun the night before the murder, defense counsel was permitted to question Warrington if he or any of the occupants of his mother's house possessed heroin, guns, or ammunition in the house on either November 21 or December 5, 2005. Further questioning regarding the ammunition found during a search conducted two weeks after the murder would provide little additional probative value. In addition, Warrington's activity the night before the murder was tangential, at best, to the issue of whether Archy killed Perez.
(22) Second, while there was some evidence presented that the bullet removed from Perez could have been fired from either a .380 caliber or nine millimeter weapon, under Archy's theory, the jury would have to infer: (a) that the nine millimeter ammunition meant Warrington had a nine millimeter weapon; (b) this nine millimeter weapon could fire .380 caliber ammunition; and (c) that this weapon was used by Warrington to fire a .380 caliber bullet into Perez. Warrington proffered no expert or other testimony in support of this theory. This argument would have required the prosecution to present evidence, which it had, to explain the presence of the ammunition and the number of people who had access to the rooms in which the ammunition was located. Accordingly, though relevant, the probative value of this evidence was outweighed by the danger of confusion of the issues.
(23) Similarly, while the drugs may have been relevant to establish Warrington's motive to kill Perez, Warrington had already testified that he and Perez were competing drug dealers. The inability to question Warrington about the drugs recovered from the search of his residence did not impair Archy's argument during summation that Warrington also had a motive for the murder. Inquiring as to the drugs recovered by police was therefore a needless presentation of cumulative evidence which was subject to exclusion under Rule 403.
(24) Finally, taken in combination, allowing cross-examination of Warrington regarding the drugs and ammunition recovered during the search was unnecessarily cumulative to establish that Warrington was a violent person who broke the law. Warrington testified that that he had been convicted of various drug offenses and that, at the time of Perez's murder, he was wanted for violating his probation, the underlying conviction of which was a failure to register as a sex offender. Thus, the drugs and ammunition together would have been a needless presentation of cumulative evidence to establish this point. We find no abuse of discretion by the Superior Court in its evidentiary rulings.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] According to Warrington, Perez also dealt drugs on East 27th between Claymont and Bowers.
[2] The remark was later admitted through a 3507 statement made by Warrington to police.
[3] 541 U.S. 36 (2004); see also U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....").
[4] Edwards v. State, 925 A.2d 1281, 1284 (Del. 2007) (citing McGriff v. State, 781 A.2d 534, 537 (Del. 2001)).
[5] Edwards, 925 A.2d at 1284 (quoting Lilly v. State, 649 A.2d 1055, 1059 (Del. 1994)).
[6] Edwards, 925 A.2d at 1284-85 (citing Charbonneau v. State, 904 A.2d 295, 304 (Del. 2006)).
[7] Id.
[8] Jones v. State, 940 A.2d 1, 9-10 (Del. 2007).
[9] DEL. R. EVID.801(c).
[10] DEL. R. EVID.801(a).
[11] See U.S. v. Jackson, 88 F.3d 845, 848 (10th Cir. 1996) (finding the statement, "Is this Kenny?" was not hearsay because declarant did not intend it as an assertion); Headley v. Tilghman, 53 F.3d 472, 477 (2d Cir. 1995) (finding the statements "Are you up? Can I come by? Are you ready?" were not hearsay).
[12] Edwards, 925 A.2d at 1285-86 (citing D.R.E. 802).
[13] DEL. R. EVID. 805.
[14] Archy argues that the Warrington's statement should have been excluded because there was conflicting court testimony regarding whether or not Perez even said, "Hey is that dusty-ass A-rod?" This argument is in direct conflict with § 3507. 11 Del. C. § 3507(b) provides that subsection (a) "shall apply regardless of whether the witness' in court testimony is consistent with the prior statement or not."
[15] DEL. R. EVID. 803(1).
[16] 321 A.2d 497, 503 (Del. 1974).
[17] U.S. CONST. amend. VI.
[18] 541 U.S. 36, 53-54 (2004).
[19] Davis v. Washington, 547 U.S. 813, 822 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.").
[20] 940 A.2d 1, 13 (Del. 2007).
[21] Archy was permitted to cross-examine Warrington on the issue as follows:

Q: And you being a drug dealer, you would be concerned about yourself being robbed?
A: Yes.
Q: Didn't you keep a gun for your own protection?
A: No.
Q: Are you telling us for all those years that you dealt drugs that you did not keep a gun for your own protection?
STATE: Objection. The scope of the question is limited to factual inquiring into the time. We are into the character of witness on under 404(b).
THE COURT: Restructure your question.
Q: The time period around November 21, 2005, you did not keep a gun around for your own protection?
A: No.
[22] 346 A.2d 158, 160 (Del. 1975).
[23] 778 A2d 1058, 1061-62 (Del. 2001) (internal quotations omitted) (quoting Jackson v. State, 770 A.2d 506, 515 (Del. 2001).
[24] DEL. R. EVID. 401.
[25] DEL. R. EVID. 402.
[26] DEL. R. EVID. 403.