DARREL PAGE, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 301, 2009.
Supreme Court of Delaware.
Submitted: April 12, 2010.
Decided: May 11, 2010.
Before HOLLAND, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 11th day of May 2010, it appears to the Court that:
(1) Defendant-Appellant Darrel Page ("Page") appeals from the Superior Court's denial of his Motion for Post-Conviction Relief pursuant to Delaware Superior Court Rule 61. We previously remanded this matter to the Superior Court to consider Page's ineffective assistance allegations from the perspective of the State's federal Constitutional obligations: (a) to provide counsel who are prepared to go to trial in a timely manner, and (b) to provide timely and adequate funding to defray the cost of necessary defense expert witnesses. Page raises four arguments on appeal. First, he contends that the Superior Court erred in dismissing his motion for post-conviction relief because his Sixth Amendment rights were violated. Second, he contends that the Superior Court improperly denied expansion of the record to consider his claim that he was denied a public trial as afforded by the Six Amendment and recently upheld in Presley v. Georgia.[1] Third, he contends his trial counsel's failure to "protect the record" constitutes ineffective assistance of counsel under Strickland. Fourth, he contends that if this case is remanded it should be reassigned to another trial judge. We find no merit to his arguments and affirm.
(2) The facts and circumstances which led to Page's arrest and convictions were stated in the direct appeal[2] as follows:
Page, a/k/a Quazzi, and Michael Jones, a/k/a Gotti, were members of a large drug ring that sold crack cocaine and marijuana in Wilmington, Delaware. Cedric Reinford, a/k/a Dreds, was the leader of the operation and would arrange large shipments of narcotics from New York City to be divided for retail sale among several dealers, including Page and Jones. The headquarters of Page's and Jone's part of Reinford's operation was the home of Page's girlfriend, Kim Still.
In early 1999, Page was arrested for trafficking in cocaine. In exchange for Reinford providing Page money to pay for bail and counsel, Page agreed to sell drugs for Reinford without taking any share of the profits. After nine months of this arrangement, Page formulated a plan to end it by killing Reinford. He enlisted Jones to help him carry out his plan.
On November 20, 1999, Jones, Page and Reinford were together in Reinford's car in Wilmington. Jones killed Reinford by shooting him three times in the back of the head. Page and Jones doused Reinford's car with gasoline and set it on fire with Reinford's body inside it. They next proceeded to Reinford's house to take Reinford's drug money from a safe. At the house, Jones shot and killed Reinford's fiancé, Maneeka Plant. He also shot Reinford's brother, Muhammad, between the eyes and left him for dead. Page and Jones fled to Philadelphia. Muhammad miraculously survived the shooting and called 911. He identified Page and Jones to the police. The police investigation led to the questioning of Still who explained Page's plan to kill Reinford. After a ten-month manhunt that included an "America's Most Wanted" episode, Page was tracked down in Atlanta, Georgia and arrested on November 3, 2000.
(3) After an approximately three week long jury trial held May 20 through June 12, 2003, Page was convicted of three counts of Murder First Degree, one count of Attempted Murder First Degree, five counts of Possession of a Firearm During the Commission of a Felony, one count of Robbery Second Degree, one count of Conspiracy First Degree, and one count of Endangering the Welfare of a Child.[3] Page was subsequently sentenced to three life sentences plus a term of years.[4] We affirmed Page's convictions on direct appeal.[5]
(4) In October 2008, Page, filed his first motion for post conviction relief, pro se, which the Superior Court denied.[6] Page moved for reconsideration, arguing that the Superior Court erred in denying his motion for post conviction relief because he was never provided a copy of his attorney's affidavits or given an opportunity to respond. The Superior Court denied Page's motion[7] and he appealed to this Court. In light of our decision in Morla v. State[8], the State moved to remand the case to the Superior Court to allow Page the opportunity to respond to counsel's affidavit. After we granted the State's motion, the Superior Court denied Page's amended motion for post conviction relief.
(5) Page thereafter appealed to this Court for relief. After oral argument, this Court remanded the case to the Superior Court for additional proceedings because one of Page's attorneys had not provided an affidavit to the Superior Court even though he was directed to do so. On remand, the Superior Court expanded the record to include an affidavit from defense counsel and supplemental memoranda from the parties. In defense counsel's affidavit, it was stated that the trial court directed Page's mother to be removed from the courtroom during voir dire over his objection on public trial grounds. Page then sought leave to amend his Rule 61 motion. The Superior Court granted Page leave to amend, stating that "in light of both the United States Supreme Court's recent decision in Pressley v. Georgia and the fact that the transcript of the vior dire does not contain any reference to the exclusion of Page's mother, the [c]ourt agrees that Page's postconviction counsel could not have raised this claim earlier."
(6) The trial court held an evidentiary hearing on February 22, 2010. On March 17, 2010, the Superior Court denied Page relief on all of his claims. In denying Page's motion for post conviction relief based upon the expanded record, the trial court explained the circumstances surrounding the continuance of Page's first scheduled trial date:
On February 20, 2002, the day before Page's first scheduled trial date, the Court held a hearing on the defense motion for continuance. For reasons unknown to the Court, this hearing was not noted on the docket, which recorded that the motion for continuance was granted on February 26, 2002. Therefore, the hearing was not transcribed until the instant remand, when the Court investigated based upon its own recollection that a hearing had occurred at which Page's speedy trial rights were discussed and preemptively waived with regard to the funding delay. Upon discovering the omission from the docket and the transcribed record, the Court immediately ordered a transcript produced. This circumstance would be unfortunate even if the hearing had been unrelated to Page's postconviction motion, but it is all the more regrettable because the transcript contains relevant material.
The hearing transcripts directly undermines Page's assertions that he was never "informed of the decision to waive my speedy trial rights" and did not waive them as to the funding delay. During the hearing, trial counsel made clear that it had considered the speedy trial implications of their continuance request:
MR. GABAY: Your Honor, if I just may, [the prosecutor] made a good point yesterday...obviously that rescheduling this may impact[,] not suggesting that it does, speedy trial rights of Mr. Page....I was downstairs explaining to Mr. Page what we are doing. And the fact that if the Court grants this, because it [is] our motion, that this would stop any potential claim for speedy trial until the case is reset. And we had some other tactical decisions that I don't think are appropriate to put on the record, but I think it is fair to say Mr. Page has an understanding, however brief it was, that I really talked to him, only had about five or ten minutes between when he got here and when we had the schedule to begin the hearing. I think he understands the purpose of what we are doing here today. I believe he is agreeable that the continuance is certainly in his best interest, given all the circumstances and he understands what impact that would have should a speedy trial motion be brought that certainly this delay could not, in any way, be used to assert prejudice. I have advised him I don't think we get any prejudice from this. I think he would concur with that.
The Court then confirmed Page's understanding and his intent to waive any speedy trial objection arising from the delay:
THE COURT: Mr. Page, is that your position?
DEFENDANT: Yes, I understand.
THE COURT: Do you understand that your counsel on your behalf has requested a continuance, and that would, in effect, toll your ability to raise it, at least he had agreed you are willing not to raise the issue of speedy trial rights. Do you understand that?
DEFENDANT: Yes.
THE COURT: Anything about it that you don't understand?
DEFENDANT: He explained it to me. I understand that.
The prosecutor explained that he could not in good faith oppose the continuance under the circumstances, but put on the record that the State had been fully prepared to proceed to trial as scheduled, and had subpoenaed twenty-four witnesses, including three out-of-state experts. After acknowledging that it was "placed in a difficult position of balancing" Page's Sixth Amendment right to funding for necessary experts with "the interests of the State and the defendant in proceeding to trial promptly," this Court granted Page's motion to continue.
(7) The Superior Court also addressed the allegation that Page's mother was excluded from the trial:
On the first day of voir dire, a bailiff raised concerns with the Court that Page's mother, Ms. Stampp, was writing down the names of each prospective juror as he or she was questioned. The State raised concerns about the venire members' privacy and juror harassment or intimidation, which the Court shared. The Court expressed that it viewed this situation differently from the media having access to juror's names, because of the risk that potential jurors could be intimidated by the actions of Page's mother, or that the information might be used to harass those seated jurors. Defense counsel suggested that preventing Page's mother from recording the names was improper because the courtroom was public, but declined to take up the cause on Ms. Stampp's behalf:
THE COURT: I can't see any purpose whatsoever that [Page's] mother would have to benefit him by writing down the names of prospective, dismissed, selected, unselected, challenged jurors. I just don't. If you can't give me some basis that she has for that, I'm going to exercise my authority to prevent her from doing that so that we protect the jurors' privacy and integrity and everything else.
MR. GABAY: I don't intend to argue this point with the Court because, quite frankly, and I don't want this to be the way it would read, I, quite frankly, could care less whether she's allowed to write the names down or not...
THE COURT: Yes, but a juror that she encounters at its place of employment somewhere down the line in a month or so is going to have a greater concern about that.
MR. GABAY: Well, I guess where I was going with that, your Honor, is I've suggested to the Court at least and I guess it's more a personal opinion that it's a public courtroom and people can do what they want in a sense that if they're doing something that the Court's uncomfortable with, which I clearly glean from your Honor's remarks that you are
THE COURT: Yes.
MR. GABAY: I don't think it's up to me to take up the woman's fight. I mean we can have an intellectual dialogue about this amongst us, but I don't think its Mr. Figliola's nor my position to deal with it. I think it's her position, and then if she wants to go get a lawyer, fine.
During its discussion with counsel, the Court briefly considered excusing Mrs. Stampp from the jury selection, but concluded, "I don't have any reason to ban her from the courtroom, but I do think that any names of jurors that she's recording for any purpose whatsoever is inappropriate." The Court then directly addressed Mrs. Stampp explaining that "I understand you've been taking down the names of prospective jurors. I'm going to ask that you stop doing that for the future and if you have the names of jurors on a piece of paper, that you turn it over to the bailiff right now. Thank you." After this statement, the Court immediately began voir dire of the next prospective juror. The transcript does not reflect that the Court excluded Page's mother from the courtroom, or that it prevented her from taking notes for other purposes.
The Court rejects assertions made by Mr. Gabay as part of Page's offer of proof at the evidentiary hearing that the transcript is inaccurate or incomplete, and that Page's mother "was not permitted to come back in the courtroom." Page has not identified, nor has the Court been able to locate, any reference in the record to Ms. Stampp being excluded from the courtroom. A trial transcript exists in part because of the problems inherent in using human memory to reconstruct court proceedings. The Court relies upon the diligence and integrity of its court reporters, its own policy and practice against holding important discussions in a capital case off-record, and the duty to trial counsel to make and preserve a record in rejecting Page's claim that the transcript is incomplete or inaccurate. Therefore, the Court will accept the version of event memorialized in the transcript of jury selection and not Mr. Gabay's recall of those events.
The Superior Court denied Page's amended Rule 61 motion and this appeal followed.
(8) Page raises four arguments on appeal. First, he contends the Superior Court improperly denied his motion for post-conviction relief on the Sixth Amendment grounds initially raised. Second, he contends that the Superior Court erred in denying leave to expand the record on Page's Sixth Amendment public trial claim. Third, he contends the failure of trial counsel to protect the record constitutes ineffective assistance of counsel under Strickland. Fourth, he contends that if this matter is remanded, it should be reassigned to a new trial court judge.
(9) We review the Superior Court's decision to deny post-conviction relief for abuse of discretion.[9] A finding of abuse of discretion will result if the Superior Court has "exceeded the bounds of reason in view of the circumstances, [or]...so ignored recognized rules of law or practice so as to produce injustice."[10] However, to the extent that Page alleges violations of his constitutional rights, he raises questions of law which we review de novo.[11]
(10) It is well-established that in order to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-part test set out in Strickland v. Washington:[12] (1) that "counsel's representation fell below an objective standard of reasonableness"; and (2) if counsel was deficient, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[13] As to the first prong of the test, there is a "strong presumption that the representation was professionally reasonable."[14] Regarding the second prong, the burden is on the defendant to make concrete and substantiated allegations of prejudice.[15] Prejudice in this context is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and the "failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel."[16] "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[17] "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[18]
(11) For "acts or omissions of counsel that are alleged not have been the result of reasonable professional judgment,"[19] "courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[20]
(12) Page contends that he was denied the effective assistance of counsel when his trial counsel accepted appointment to his case despite the fact that they would be unable to conduct a trial within one year of his offense as contemplated by Administrative Directive No. 88.[21] The Superior Court found that Page's counsel acted reasonably in accepting and retaining Page's case and that Page waived this claim. The record supports these findings.
(13) In Mr. Gabay's affidavit, he stated "Mr. Page [] requested that I remain on his case as appointed counsel notwithstanding the disclosure about my calendar and that of Mr. Figliola's at the time." Furthermore, the record reflects that the appointment of Mr. Gabay and Mr. Figliola came at Page's request. Following his arrest, Page retained Mr. Gabay and Mr. Figlioa as private counsel. After it was determined that Page was entitled to appointed counsel, Mr. Gabay spoke with Page concerning who would be appointed to represent him at trial. Mr. Gabay then wrote to the trial court requesting that he be appointed, as conflict counsel, to represent Page because he was Page's "first choice." The trial court granted that request. On this record, Page's speedy trial claim must be denied due to waiver. The trial court accepted Page's request to have particular counsel appointed for his case and Page had full knowledge of the trial counsels' busy calendars when he requested their appointment.
(14) Even if Page did not waive his right to bring this claim, Page's contention fails because he has not established prejudice as required by Strickland. The circumstances presented here do not fall within one of the three specific circumstances identified in United States v. Cronic[22] where an attorney may be found to have been ineffective absent a showing of actual prejudice. Rather, because Page's argument is that counsel failed to perform specific actions at specific times, his claim is governed by the Strickland standard.[23] The Superior Court correctly held that Page had manifestly failed to establish prejudice.
(15) The Superior Court also held that Page was not coerced into sacrificing his right to a speedy trial by the lack of funding for necessary defense experts for three reasons:
First, the [c]ourt concludes that a voluntary waiver was made that enabled Page to delay trial for his own benefit to obtain the assistance of the particular experts that he and his trial counsel wished to retain. Second, setting aside this affirmative waiver, trial counsel's decision to seek a continuance rather than finding alternative experts or raising a speedy trial claim was a strategic one, and reasonable under the circumstances. Furthermore, . . .notwithstanding that Page and his trial counsel did not object to continuing the trial, the delay attributable to funding was abbreviated and would not have supported dismissal on speedy trial grounds even if a motion had been raised.
Based on the record, this holding was not an abuse of discretion by the Superior Court.
(16) The Superior Court properly considered and rejected Page's claim under Presley v. Georgia.[24] Although Mr. Gabay's affidavit stated that he distinctly recalled the trial court directing Page's mother be removed from the courtroom during voir dire, the trial transcript does not support his recollection. Instead the record reflects a conclusion by the trial judge "I don't have any reason to ban her from the courtroom." It also includes an instruction to Ms. Stampp on how to behave in the courtroom. The trial judge conducted her own review of the voir dire transcript because of the conflict between her recollection and Mr. Gabay's affidavit and accepted the completeness of the trial transcript. We find no abuse of discretion.
(17) Page next contends that the Superior Court denied him the opportunity to expand the record on remand. The trial court did not abuse its discretion. After considering Mr. Gabay's affidavit and the transcript of the proceedings, the trial judge made a factual finding that Ms. Stampp had not been removed from the courtroom. That finding is supported by the official record.
(18) Page contends that he was denied the effective assistance of counsel when his trial counsel failed to "protect the record" to indicate that Ms. Stampp was removed from the courtroom by the trial judge. Because the Superior Court's factual finding that Ms. Stampp was not removed from the courtroom is supported by the record, Page's trial counsel could not have been ineffective for failing to ensure the record reflected an event which the trial judge found did not occur.
(19) Finally, Page contends that if this matter is remanded, it should be reassigned to a new trial judge. Because there is no basis to remand this case again, this issue is moot.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] 130 S.Ct. 721 (U.S. 2010).
[2] 934 A.2d 891, 894 (Del. 2007).
[3] Page, 934 A.2d at 893-94.
[4] Id. at 894.
[5] Id.
[6] See State v. Page, 2009 WL 1141738 (Del. Super. Apr. 28, 2009).
[7] See State v. Page, I.D. No. 9911016961 (Del. Super. May 11, 2009) (ORDER).
[8] 2008 WL 2809156 (Del. July 22, 2008).
[9] Outten v. State, 720 A.2d 547, 551 (Del. 1998); Dawson v. State, 673 A.2d 1186, 1190 (Del. 1996); Allen v. State, 644 A.2d 982, 985 (Del. 1994).
[10] Edwards v. State, 925 A.2d 1281, 1284 (Del. 2007) (citing McGriff v. State, 781 A.2d 534, 537 (Del. 2001)); Baumann v. State, 891 A.2d 146, 148 (Del. 2005).
[11] Outten, 720 A.2d at 551; Dawson, 673 A.2d at 1190.
[12] 466 U.S. 668 (1984).
[13] Id.
[14] Dawson, 673 A.2d at 1196 (citing Flamer v. State, 585 A.2d 753, 753-754 (Del. 1990)).
[15] Id. (citing Wright v. State, 671 A.2d 1353, 1356 (Del. 1996)).
[16] Id. (citing Flamer v. State, 585 A.2d at 753).
[17] Strickland v. Washington, 466 U.S. at 697.
[18] Id.
[19] Id. at 690.
[20] Id. at 689 (quotations and citations omitted).
[21] Administrative Directive No. 88 is not a mandate, but rather a "guideline" that can "neither give nor deny rights." State v. Lawrie, 1995 WL 818511, at *18 (Del. Super. Nov. 28, 1995), aff'd, 1996 WL 415913 (Del. July 15, 1996).
[22] United States v. Cronic, 466 U.S. 648 (1984).
[23] Bell v. Cone, 535 U.S. 685 (2002).
[24] 130 S.Ct. 721.