# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                                 )
       v.                  )     ID: 2006010317
                                 )
DASHAN FREEMAN,      )
                                 )
     Defendant.      )

Date Submitted: April 9, 2023
Date Decided: April 9, 2023
Date Revised: April 10, 2023[1]

## <u>MEMORANDUM OPINION</u>

***Upon Defendant's Motion to Suppress and/or Exclude Evidence from Defendant's Cell Phone*: GRANTED**

***Upon Defendant's Motion to Suppress and/or Exclude Defendant's Department of Correction Communications*: DENIED**

***Upon Defendant's Motion to Exclude All Evidence Obtained from Deona Bethea's Cell Phone*: GRANTED, in part**

***Upon Defendant's Motion to Exclude Certain § 3507 Statements as Hearsay*: DENIED**

John Downs, Esquire, Deputy Attorney General and Cynthia Hurlock, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorneys for the State of Delaware*.

Ross A. Flockerzie, Esquire and Alexandria M. Shaffer, Esquire, Office of Defense Services, Wilmington, Delaware. *Attorneys for Defendant*.

**Adams, J.**

---

[1] This Revised Memorandum Opinion corrects scrivener's errors throughout due to the expedited time frame upon which it was decided.

# INTRODUCTION

This first-degree murder trial is scheduled to begin on April 11, 2023. Although this case has been pending for nearly three years, a flurry of activity has occurred over the last three weeks relating to the trial.[2] On March 10, 2023, the State: (1) produced 55,518 pages from an extraction of Deona Bethea's cell phone, even though the State had the data in its possession since June 25, 2020; and (2) produced the Search Warrant associated with the extraction of data from Defendant's cell phone, despite being issued on November 18, 2020. On March 17, 2023, the State produced communications records from the Department of Correction from January 2023 through March 2023.[3] During this time, the parties also exchanged redactions to an interview of Deona Bethea dated June 25, 2020.

---

[2] This flurry of activity includes the holiday weekend prior to trial, where the State responded to Defendant's various motions, and Defendant filed replies. Even if not specifically mentioned herein, the Court has reviewed and considered all submissions, including those in the text of emails. Each of these submissions will be added to the docket in this matter as soon as reasonably practicable.

[3] On April 7, 2023, the State also produced discovery consisting of January 2022 Department of Correction records. That same day, Defendant filed a Motion to Dismiss for Prosecutorial Misconduct based on this late disclosure. The State filed its response to the Motion to Dismiss on April 9, 2023. Because of the crunch of time, the Court plans to issue a separate decision on the Motion to Dismiss on April 10, 2023.

On April 6, 2023, a jury was selected in this case. On April 7, 2023, the State provided January 2022 Department of Correction Records to the defense, even though the State received this information on March 23, 2023.

Pending before the Court are: (1) Defendant's Motion to Suppress and/or Exclude Evidence from Defendant's Cell Phone, filed April 4, 2023; (2) Defendant's Motion to Suppress and/or Exclude Defendant's Department of Correction Communications, dated April 4, 2023; and (3) Defendant's Motion to Exclude All Evidence Obtained from Deona Bethea's Cell Phone. The parties also requested that the Court issue a decision regarding certain redactions to Ms. Bethea's June 25, 2020 interview.

## I. Motion to Suppress and/or Exclude Evidence from Defendant's Cell Phone[4]

On a motion to suppress, the burden of proof is on the defendant to demonstrate that the search warrant was unlawful.[5] "The defendant must prove by a preponderance of the evidence" that the search violated their rights under the U.S. Constitution or Delaware law.[6]

---

[4] The Scheduling Order in this case required Motions to Suppress be filed by June 9, 2021. The State, however, did not provide the Search Warrant at issue until March 10, 2023. Therefore, in the interests of justice, the Court will consider the motion.

[5] *State v. Reese,* 2019 WL 1277390, at *3 (Del. Super. Mar. 18, 2019).

[6] *Id.*

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or things to be seized."[7] The United States Supreme Court has observed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'"[8]

The Supreme Court of Delaware "has held that our Constitution affords our citizens protections somewhat greater than those of the Fourth Amendment."[9] Article I, Section 6 of the Delaware Constitution provides: "The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them *as particularly as may be*; nor then, unless there be probable cause supported by oath or affirmation."[10] Section 2307(a) of Title 11 of the Delaware Code, relating the issuance of search warrants, contains a more

---

[7]     U.S. Const. amend. IV. (emphasis added).

[8]     *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted).

[9]     *Wheeler v. State,* 135 A.3d 282, 298 (Del. 2016) (cleaned up).

[10]    Del. Const. art. I, § 6.

3

stringent requirement than the Fourth Amendment in that it requires the warrant to "describe the things or persons sought *as particularly as possible*."[11]

There are two primary objectives of the warrant requirement: (1) to eliminate searches that are not based on probable cause, and (2) to ensure that "those searches deemed necessary [are] as limited as possible[,]" to prevent "exploratory rummaging in a person's belongings."[12] The particularity requirement is the mechanism that ensures the proper scope of a search.[13] Pursuant to Delaware law, the warrant must describe things to be seized as particularly as they may be and must not be broader than the probable cause on which it is based.[14]

For a search warrant to be valid, the warrant must be supported by probable cause.[15] An issuing judge or magistrate applies the "four corners" test, which looks at the face of the affidavit to determine whether it establishes probable cause.[16] The judge or magistrate should also evaluate the totality of the circumstances to

---

[11]    11 *Del. C.* § 2307(a). (emphasis added)

[12]    *Wheeler,* 135 A.3d at 298, quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

[13]    *Id.* at 298-299.

[14]    *Id.* at 299.

[15]    *State v. Reese,* 2019 WL 1277390, at *3 (Del. Super. Mar. 18, 2019).

[16]    *Id.*

4

determine probable cause.[17] The facts stated in the affidavit must be sufficient to establish a "reasonable inference or logical nexus"[18] "between the crime and the place to be searched."[19] The warrant application must describe things sought and their location as particularly as may be and must also recite facts upon which such suspicion is based.[20]

A reviewing court applies the "substantial basis" test to determine whether an affidavit establishes probable cause that evidence of a crime will be found in the place to be searched and that the magistrate's determination was based on the totality of the circumstances.[21] In its review, the court is limited to the four corners of the affidavit and must also consider the totality of the circumstances.[22] A reviewing court should give "great deference" to a magistrate's determination of probable cause.[23]

---

[17]     *Id.*

[18]     *Id.*

[19]     *Buckham v. State,* 185 A.3d 1, 16 (Del. 2018).

[20]     *Id.* quoting 11 *Del. C.* § 2306.

[21]     *See id.*; *Reese,* 2019 WL 1277390, at *3.

[22]     *Reese,* 2019 WL 1277390, at *3.

[23]     *Id.*

The Supreme Court of Delaware has held that special attention should be given to warrants involving electronic devices:

> [W]arrants issued to search electronic devices call for particular sensitivity given the enormous potential for privacy violations that "unconstrained searches of cell phones" pose. Modern smartphones store an "unprecedented volume of private information, and a top-to-bottom search of one can permit the government access to 'far more than the most exhaustive search of a house.[24]

**The Evidence from Defendant's Cell Phone Must Be Suppressed**

The evidence from Defendant's cell phone must be suppressed on the following bases: (1) there is insufficient evidence to establish probable cause that the specific "Red in color Apple iPhone cell phone" at issue in the warrant was the phone that Defendant used to communicate with Deona Bethea ("Bethea") the day before the crime occurred through the date of Defendant's arrest; and (2) the Search Warrant was overbroad and insufficiently particular.

The Court will begin its analysis by reviewing the pertinent sections of the affidavit and warrant. In the Affidavit, the affiant, Detective Justin Kane ("Kane"), averred that, on June 25, 2020, Wilmington Police were dispatched in response to a call from the female victim, Bethea, who stated "that her boyfriend had shot

---

[24] *Buckham,* 185 A.3d at 18, quoting *Wheeler* 135 A.3d at 299. *See also Taylor v. State*, 260 A.3d 602, 613-14 (Del. 2021) ("Given the substantial risk that warrants for digital and electronic devices may take on the character of general warrants, this reality necessitates heightened vigilance, at the outset, on the part of judicial officers to guard against unjustified invasions of privacy.") (internal citations and quotations omitted).

someone."[25] Upon arrival, police encountered a male victim with multiple gunshot wounds and a female victim who made the report.[26] At the scene of the crime, Bethea stated to officers that she was "cheating on" her boyfriend, the Defendant, and that Defendant walked in on her and the male victim, while they were having sexual intercourse.[27] Bethea advised that Defendant became enraged and began shooting.[28]

At a recorded interview that day at Christiana Hospital, where Bethea was being treated for her injuries, Bethea further advised that she had "broken up" with Defendant on May 31 of that year, and that she had subsequently blocked Defendant on her cell phone. Bethea further stated that she unblocked Defendant on June 24, 2020, Defendant's birthday, and that they communicated via cell phone throughout that day.[29] Bethea again identified Defendant as the perpetrator.[30]

---

[25]     Affid. Of Probable Cause ¶ 3 [hereinafter "Affidavit"].

[26]     *Id.* ¶ 4. The male victim ultimately succumbed to his injuries at Christiana Hospital. *Id.*

[27]     *Id.* ¶ 5.

[28]     *Id.*

[29]     *Id.* ¶ 6.

[30]     *Id.*

7

The Affidavit indicates that on June 25, 2020, Bethea consented to a search of her cell phone and that Wilmington Police downloaded its contents on this date.[31] An examination of the contents of Bethea's phone confirmed that Bethea had contact with Defendant throughout the day on June 24, via call and text.[32] On June 25, 2020, an arrest warrant was issued for the charges of Murder in the First Degree, as well as other related charges.[33] Defendant was taken into custody on September 23, 2020, at which point his cell phone was seized.[34]

Paragraph 11 of the Affidavit, which is crucial to the Court's analysis of the nexus between the probable cause and the scope of the search, states that "due to" the cellular communication between Defendant and Bethea on June 24, 2020, "this investigator believes that there is possible cellular communication between the defendant and V2 [Victim] after the incident as well."[35]

---

[31]     *Id.* ¶ 7-8.

[32]     *Id.* ¶ 8.  This paragraph, however, does not state how Detective Kane knew that Bethea and Defendant had contact with each other.  The Court is aware, through review of the police report in this matter, that Detective Kane was able to find Defendant's nick name in Bethea's contact list on her phone, along with his associated cell phone number.  *See* footnote 42, *infra*.  None of this information, however, was contained in the Affidavit.  The Court limits its review solely to the four corners of the search warrant.

[33]     *Id.* ¶ 9.

[34]     *Id.* ¶ 10.

[35]     *Id.* ¶ 11.

8

Paragraphs 12-23 seek to establish probable cause of locating evidence of the crime on Defendant's cell phone by making vague and general assertions.[36] For example, Detective Kane averred that, based on his training and experience, subjects involved in illegal activities sometimes take pictures or make recordings of themselves with weapons, that said subjects sometime search for weapons on the internet, and that said subjects use social media applications to post information about crimes they have been involved in.[37]

The Affidavit requested a top-to-bottom examination of Defendant's cell phone for the time frame of June 24, 2020—the day before the crime occurred, through September 23, 2020—the date of Defendant's arrest.[38] The warrant authorized the search requested for this time period.[39]

The Court infers from the Affidavit that investigators sought to examine Defendant's cell phone for communications between Defendant and Bethea that occurred the day before the crime occurred and over the approximately three-month

---

[36]   *See id.* ¶ 12-23.

[37]   *See e.g.* ¶¶ 12-23.

[38]   *Id.* at ¶ 25. Although the warrant does not use the problematic "any and all" language from the Supreme Court's decision in *Taylor*, the warrant, for all intents and purposes, requested just about all possible information that could be found in a smartphone.

[39]   Search Warrant (Nov. 18, 2020).

period after the crime occurred. Detective Kane averred to statements made by Bethea that Bethea was in communication with Defendant via cell phone the day before the crime occurred and a forensic examination of Bethea's phone confirmed this. The Affidavit, however, only states that Detective Kane "believe[d] that [Defendant] was using the Red in color Apple iPhone cell phone from the date of the incident until the day of his arrest on 23 September 2020."[40]

The Court finds that there is insufficient evidence to establish probable cause that the specific "Red in color Apple iPhone cell phone" at issue was the phone that Defendant used to communicate with the Bethea the day before the crime occurred through the date of Defendant's arrest. In the Affidavit, Detective Kane fails to provide the telephone number associated with the "Red in color Apple iPhone." The only statement connecting the red iPhone to communications with Bethea is the following: "[t]his officer *believes* that Freeman was using the Red in color Apple iPhone cell phone from the date of the incident until the day of his arrest on 23 September 2020."[41] An officer's "belief," with nothing more, cannot meet the probable cause requirement of the United States and Delaware Constitutions.

---

[40]     Affidavit ¶11.

[41]     Affidavit ¶11 (emphasis added). In fact, police "had no knowledge of any cellular communications by Mr. Freeman from June 25, 2020 (the date of the incident) to September 23, 2020 (the date of his arrest), as they had no subscriber information, no verification of a phone number associated with him and/or the phone, etc." Defendant's Motion to Suppress, ¶3.

Therefore, it is impossible to tell whether the red iPhone was used by Defendant to exchange text messages with Bethea at any point during the relevant time period.[42] Although it is possible that Bethea was communicating with Defendant, the Affidavit is devoid of information connecting any messages between Bethea and the red iPhone at issue.

Even if the Affidavit could connect the text messages between Bethea and the red iPhone, the search that was authorized was not limited to a search for such evidence and the general averments, based only upon the affiant's training and experience of subjects involved in illegal activity, do not provide a substantial basis for the magistrate's probable cause finding.

---

[42] Detective Kane, who signed the Affidavit, was aware of one phone number associated with Defendant because of his review of Bethea's cell phone that was turned over to Wilmington Police the day of the incident (June 25, 2020) with its data extracted that same day. In the Wilmington Police Report, discussed in Section III, Detective Kane was able to associate a phone number for Defendant from Bethea's contact list. Therefore, it appears this information was reasonably available to Detective Kane and could have been included in the Affidavit dated November 18, 2020. The Court will not speculate as to whether Detective Kane knew and chose not to include the cell phone number for the red iPhone in the Affidavit because it either was – or was not – the same as the contact number found in the Bethea's contact list.

The Court also notes that Defendant stated in his April 9, 2023 Letter that police learned that before the incident, Bethea was communicated with a phone number associated with Defendant: (610) 504-4362. Upon Defendant's arrest, the phone seized from him was associated with an entirely different phone number: (302) 565-7261. (Defendant's April 9, 2023 Letter at 3). None of this information is found in the Affidavit.

11

In *Buckham v. State*, the Supreme Court of Delaware found that generalized suspicions such as "criminals often communicate through cellular phones" do not provide a substantial basis to support a probable cause finding.[43] The suspicions contained in paragraphs 12-23 of the Affidavit are no less general or vague.[44] For example, paragraph 14 states that "subjects involved in illegal activities sometimes take notes and or write documents electronically about their involvement in illegal activities."[45] Paragraph 23 states that "through training, knowledge, and experience . . . persons involved in criminal acts will utilize Mobile Electronic Devices such as cellular telephones to further facilitate their criminal acts.[46] The Affidavit does not contain any information that, aside from phone calls and text messages to and from Bethea, evidence of the crime would be found in any other areas or formats in Defendant's phone, yet the Affidavit requested and the warrant authorized a search of the phone's entire digital universe.

In *Buckham,* although there may have been probable cause that GPS data from the phone could indirectly assist in locating the weapon used in the crime, the

---

[43]   185 A.3d 1, 17 (Del. 2018).

[44]   *See* Affidavit at ¶ 12-23.

[45]   *Id.* at ¶ 14.

[46]   *Id.* at ¶ 23.

Supreme Court of Delaware found that the trial court committed plain error in denying the defendant's motion to suppress because the warrant authorized a "top-to-bottom search" of the phone, and to that extent was "plainly mismatched" to the probable cause it cited to justify it.[47]  The incongruence between the scope of the search authorized by the warrant and the scope of the search substantially supported by probable cause is very similar here.  Here, even if the Court found probable cause connecting the red iPhone at issue to communicating with Bethea (which it does not), there simply is no probable cause supporting a wholesale search of all the data contained in Defendant's phone.[48]

Defendant's cell phone evidence must also be suppressed because the warrant fails to "describe the items to be searched for and seized with as much particularity as the circumstances allow."[49]  "A warrant cannot be broader than the probable cause it is based upon and it must describe the items with as much particularity as the circumstances reasonably allow."[50]  Even if there was probable cause that evidence of phone calls and text messages between Defendant and Victim would be found,

---

[47]    *Buckham,* 185 A.3d at 18.

[48]    *See id.* (the scope of the warrant was "plainly mismatched" to the probable cause justifying it).

[49]    *Reese v. State,* 2019 WL 1277390, at *5 (Del. Super. Mar. 18, 2019).

[50]    *Id.*, citing *Buckham,* 185 A.3d at 18-19.

13

the warrant authorized a search that far exceeded that category of evidence by authorizing a comprehensive search of Defendant's cell phone data.[51]

Moreover, the averments in the Affidavit suggest that the warrant application could have reasonably described the items to be seized with greater particularity. On June 25, 2020, approximately five months before the magistrate issued the instant search warrant, Wilmington Police had already downloaded data from Bethea's phone.[52] This fact creates a reasonable inference that from an examination of communications between Defendant and Bethea found on Bethea's cell phone, the affiant possessed or could have possessed information to more accurately describe the types of items likely to be found on Defendant's cell phone. Yet, the Affidavit makes a blanket request for virtually all of the data on Defendant's phone supported only by the affiant's "training and experience" that "subjects involved in illegal activity" tend to use the various forms of technology on their cell phones.

Defendant has shown by a preponderance of the evidence that there was not a substantial basis for a finding of probable cause, let alone probable cause justifying the scope of data to be searched. Moreover, the Search Warrant was overbroad and

---

[51] The State relies on *Taylor v. State* for its position that because the search warrant here was not a general warrant because it does not include the "any and all" and "including but not limited to" language. State's Response to Defendant's Motion to Suppress and/or Motion to Exclude Cell Phone Evidence (April 9, 2023) at 8.

[52] Affidavit at ¶ 8.

14

insufficiently particular. As such, the Search Warrant was invalid. On this basis, the Court grants Defendant's motion to suppress all evidence obtained from his cell phone.

The Court will address, briefly, the State's attempt to limit the exclusion of all evidence from the red iPhone. The State concedes that the Search Warrant for the red iPhone is overbroad, but argues that it is not a "general" warrant and therefore can be limited in scope. Specifically, the State wishes to limit the search to communications between Defendant and Bethea. The Court rejects this for two reasons: (1) as previously stated, there is no probable cause connecting the red iPhone at issue to any communications with Bethea; (2) the Search Warrant is, in fact, a general search warrant and must be suppressed in its entirety.

The Supreme Court of Delaware, in *Taylor v. State*, adopted the Third Circuit's description of a general warrant and an overly broad warrant, and the proper remedy for each:

> There is a legal distinction between a general warrant, which is invalid because it vests the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence, and an overly broad warrant, which " describe[s] in both specific and inclusive general terms what is to be seized,' but 'authorizes the seizure of items as to which there is no probable cause ….'" [A]n overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies

the Fourth Amendment. In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby.[53]

As the Court previously held, the warrant lacks probable cause tying the red iPhone at issue to any communications with Bethea. Therefore, the Search Warrant authorizes the seizure of items to which there is no probable cause. Moreover, the fact that the warrant does not use the language "any and all" puts form over substance. A review of the request for the Search Warrant reveals that the warrant lists essentially any and all items within the phone – from photos to location, and any possible piece of data that could be included in one's smartphone. This is evidenced by the fact that the State downloaded 43,426 pages of evidence from the red iPhone.[54] Therefore, the Court suppresses the evidence from Defendant's red iPhone in its entirety.

## II. Defendant's Motion to Suppress and/or Exclude Defendant's Department of Correction Communications

The Attorney General's authority to seize evidence is limited to the subpoena powers provided by 29 *Del. C.* § 2504(4).[55] The Attorney General's subpoena

---

[53] *Taylor v. State*, 260 A.3d 602, 617 (Del. 2021) (quoting *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006) (internal citations omitted).

[54] Defendant's Letter in Support of its Motion to Suppress and/or Exclude the red iPhone Evidence (April 9, 2023).

[55] Section 2504(4) provides that the Attorney General has authority to "investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith…."

16

powers are "always subject to control by the court."[56] The State seized Defendant's Department of Correction ("DOC") communications for two time periods: (1) January-February 2022; and (2) January-March 2023. The State issued subpoenas for both sets of communications, although it does not appear that the defense was aware of the existence of the March 2023 subpoenas until the State filed its response to the Motion to Suppress on April 8, 2023. Defendant seeks exclusion of all DOC communications from use by the State at trial.

The Supreme Court of Delaware has held that in order to lawfully seize a defendant's prison communications, the Attorney General is required to issue a subpoena that is reasonable under the Fourth Amendment.[57] The reasonableness requirement requires a reviewing court to analyze whether: "(1) the contested actions furthered an important or substantial government interest…, and (2) the contested actions were no greater than necessary for the protection of that interest."[58]

---

[56] *In re Henry C. Eastburn & Son, Inc.*, 147 A.2d 921, 925 (1959).

[57] *Whitehurst v. State*, 83 A.3d 362, 367 (Del. 2013), quoting *Procunier v. Martinez*, 416 U.S. 396, 423 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). The Court will refer to the two-pronged reasonableness requirement as the "*Martinez* Standard."

[58] *Id.*

17

**February 2022 DOC Subpoena**

On February 22, 2022, the State issued a subpoena (the "February 2022 Subpoena") to the Delaware DOC seeking:

> [A]ll records regarding <u>telephone, visiting room conversations and iPad records</u> for inmate **Dashan Freeman SBI 00394097,** including, but not limited to any and all available approved phone number lists, outgoing call log entries and conversations for the time period of **January 1, 2022 to present** *(\*Present to mean the date Department of Corrections produces these materials to the DOJ).*
>
> The undersigned DEPUTY ATTORNEY GENERAL hereby confirms that the information sought is relevant and material to the above-captioned law enforcement inquiry. The request is specific and has been limited in scope to the extent reasonably practicable in light of the facts and circumstances of the above-captioned law enforcement matter and deidentified information can not reasonably be used.[59]

Defendant argues that the February 2022 Subpoena is not reasonable because the State has not articulated "an important or substantial government interest" in these records because the "issuing subpoena is entirely devoid of an articulation of the need by the government for these records."[60] Defendant also challenges the February 2022 Subpoena on the basis that it relies on "boilerplate language" and that seeking "'all records' is the antithesis of a specific request which is limited in scope."

---

[59]    Mtn. to Suppress and/or Exclude Defendant's DOC Communications (April 4, 2023), Ex. A.  (emphasis in original).

[60]    *Id.* at 3.

In support of the subpoena's reasonableness, the State argues that Bethea signed and delivered a notarized affidavit in February 2022 where she avers that she made a mistake in identifying Defendant as the perpetrator. Moreover, before Defendant was arrested, Bethea and Defendant had been texting each other, leading the State to believe that Bethea and Defendant may have been communicating prior to her signing the affidavit.[61] As such, the State issued a subpoena to DOC in February 2022 for Defendant's DOC communications for telephone, visiting room and iPad records for Defendant from January 1, 2022 to February 22, 2022, the day of Bethea's affidavit.[62]

The State also argues that there is not a probable cause requirement under the Fourth Amendment for obtaining prisoner phone calls by subpoena because prisoners have no expectation of privacy in prison phone calls.[63] Finally, the State argues that the subpoena for Defendant's prison calls was motivated by the State's valid concern that of Defendant was attempting to contact Bethea and influence her

---

[61] State's Response to Defendant's Motion to Suppress Prison Phone Call Evidence at 2 (April 8, 2023). Defendant, in a letter to the Court later in the day on April 8, 2023, argues that the State "attempts to justify its subpoena based on information learned from the subpoena." As such, "the State puts the cart before the horse." It is not clear whether this is directed to the February 2022 Subpoena or the January-March 2023 Subpoenas.

[62] *Id.*

[63] *Id.* at 5-7.

testimony.[64]  The State also argues that any attempt or actual contact by Defendant to contact Bethea "would further an important government interest."[65]

The Court finds that the State has met the reasonableness requirements of the *Martinez* Standard.[66]  The Supreme Court's decision in *State v. Whitehurst* is instructive.  In *Whitehurst*, the Supreme Court held that the State met the first prong of the *Martinez* Standard because an "on-going investigation in one crime and the investigation of a potential subsequent crime, witness tampering, fall within the important government interest of investigating and preventing criminal activity."[67] This was so, even though the tip about the crime came from an uncorroborated source.[68]

The same is true here.  In February 2022, a notarized affidavit was delivered to the Department of Justice, signed with the name Deona Bethea.[69]  The State knew

---

[64]     *Id.* at 10.

[65]     *Id.* at 11.

[66]     There is no requirement that the reasonableness requirements must be located in the body of the subpoena, and Defendant has not cited any authority that would require as such.  *See Johnson v. State*, 983 A.2d 904, 921 (Del. 2009) (discussing the fact that the State's proffered basis for issuing the subpoena was argued at the suppression hearing).

[67]     *Whitehurst*, 83 A.3d at 367.

[68]     *Id.*

[69]     State's Response to Mtn. to Suppress DOC Comm. at 2.

from their investigation that although Bethea identified Defendant as the perpetrator on the day of the incident, Bethea wanted no assistance from Wilmington Police Department Victim Services personnel. The State also knew that Defendant and Bethea communicated with each other prior to the incident. In light of Bethea's affidavit, the State continued its investigation into the incident and Defendant's involvement, and also the reasonable possibility that Defendant had made contact with Bethea to sign the affidavit, despite a no contact order. As such, the State has met the first prong of the *Martinez* Standard in identifying both an important and substantial government interest.[70]

Second, the Court also finds that the contested actions – the State's request for DOC Communications from "January 1, 2022 to present" – were no greater than necessary for the protection of their interest. Here, the Court assumes that the State is not seeking to introduce into evidence any records after February 22, 2022 related to the February 2022 Subpoena, even though the February 2022 Subpoena indicates

---

[70] Based on the Court's review of the State's Response, it does appear that the State relies on certain information obtained from the 2022 DOC records to justify its subpoena. The Court finds this to be the result of sloppy drafting, as the State does identify important and substantial government interests based on the information known by the State prior to issuing the 2022 DOC Subpoena. Again, the Court reiterates that the State is not required to have probable cause to subpoena the phone recordings, only reasonableness. *Whitehurst*, 83 A.3d at 368. The State here meets the reasonableness requirements for the reasons stated herein.

21

that "present" means the date of production.[71] This time frame is sufficiently limited

in scope and tailored to the investigation of Defendant's potential contact of Bethea,

and therefore meets the second prong of the *Martinez* Standard.

**March 2023 Subpoenas**

In March 2023, the State issued several subpoenas:[72]

1. Issued March 9, 2023: You are hereby commanded to provide all records regarding telephone, visiting room conversations and DOC electronic messages or video calls for inmate **DASHAN FREEMAN, SBI# 00394097, DOB: 06/24/1982,** including, but not limited to any and all available approved phone number lists, outgoing call log entries and conversations for the time period of 01/01/2023 through the present.[73]
2. Issued March 15, 2023: You are hereby commanded to provide any and all **phone calls and inmate information** for calls that have been placed to phone number: **(484) 860-5151** from 03/10/2023 through 03/14/2023.[74]

---

[71]  *See* State's Response to Defendant's Motion to Suppress and/or Exclude Prison Phone Call Evidence at 2. (indicating that the State was only seeking records from January 1, 2022 to February 22, 2022 as a result of the February 2022 DOC Subpoena).

[72]  Initially, the Defense, in its Motion to Suppress and/or Exclude Defendant's DOC Communications, indicated that no subpoenas were issued for the 2023 communications. The Court requested clarification on this issue after the State's Response attached the March 2023 Subpoenas. It appears that although the March 2023 Subpoenas were issued, the Defense saw them for the first time on April 8, 2023 when it received the State's Response. In any event, the Defense filed a response letter in Support of its Motion to Suppress and/or Exclude the DOC Subpoenas, so any harm by the failure of the State to provide the subpoenas earlier is minimal.

[73]  State's Response to Defendant's Motion to Suppress and/or Exclude Prison Phone Call Evidence, Ex. C. (emphasis in original) (April 8, 2023).

[74]  *Id.* at Ex. D. (emphasis in original).

3. <u>Issued March 17, 2023</u>: You are herby commanded to provide any and all **phone calls and inmate information** for calls that have been placed to phone number: **(484) 860-5151** from 01/01/2022 through 03/31/2022.[75]
4. <u>Issued March 23, 2023</u>: You are hereby commanded to provide any and all **phone calls and inmate information** for calls that have been placed to phone number: **(484) 860-5151** from 01/01/2022 through 03/17/2023.[76]
5. <u>Issued March 23, 2023</u>: You are hereby commanded to provide any and all phone calls and call detail sheets for all calls placed from **03/10/23 through 03/23/23** by the DOC PIN assigned to inmate, **Ryan Flamer SBI 00480896, DOB: 06/30/1980, AND which were placed to any of the following phone numbers:** (267) 261-7052, (484) 860-5151, (484) 868-2555.[77]
6. <u>Issued March 24, 2023</u>: You are hereby commanded to provide all records regarding telephone, visiting room conversations and DOC tablet electronic messages or video calls for inmate **DASHAN FREEMAN, SBI# 00394097, DOB: 06/24/1982,** including, but not limited to any and al available approved phone number lists, outgoing call log entries and conversations for the time period of 03/21/2023 through 03/24/2023.[78]

The Court finds that the State has met the reasonableness requirements of *Martinez* for the March 2023 Subpoenas. As to the first prong, the State indicates that as trial neared, the State's Investigator, Guillermo Santiago, made contact with Bethea to hand deliver subpoenas for her for a trial preparation meeting and trial.[79] Inv. Santiago spoke with Bethea on March 9, 2023, but Bethea was reluctant to speak

---

[75]     *Id.* (emphasis in original).

[76]     *Id.* (emphasis in original).

[77]     *Id.* (emphasis in original).

[78]     *Id.* (emphasis in original).

[79]     State's Response to Defendant's Motion to Suppress and/or Exclude Prison Phone Call Evidence at 3.

with Santiago and did not seem interested in any part of the upcoming trial. As a result of this, the State believed there was still on-going communications between Bethea and Defendant, and the State issued the March 9, 2023 subpoena.

Moreover, on March 13, 2023, Bethea came to the Department of Justice after being issued a subpoena. At that time, Bethea told the State "she was not going to testify, she was not going to come to court, she wanted nothing to do with the case."[80] After a continued investigation, the State believed that Bethea was using the name "Gab Jackson" to speak to Defendant.[81] The State also believed that Defendant may have asked another inmate to put Bethea on the other inmate's DOC call log, or PIN sheet, thereby avoiding detection.[82] As a result, the State issued the subpoenas listed in numbers two through five, above.[83]

The Court finds that the State meets the first prong of the *Martinez* Standard because the State was continuing its ongoing investigation of the incident, along with the possibility of witness tampering by Defendant. Again, Defendant argues that the State attempts to justify the subpoena based on information learned from the

---

[80]    *Id.*

[81]    *Id.*

[82]    *Id.*

[83]    *Id.*

subpoena, but that is not the case. The State only issued the March 2023 Subpoenas after the State met with Bethea and she indicated she was not willing to testify and "wanted nothing to do with the case." The March 2023 Subpoenas were also issued after the State discovered that Bethea may be communicating to Defendant under the name "Gab Jackson" and that between January 1, 2022 to February 17, 2023 one hundred and thirty nine (139) calls were made to Bethea's phone, utilizing the PIN numbers of three other inmates.[84]

For all these reasons, the State had reason to believe that Defendant was tampering with a witness, Bethea, although he had a no contact order. The Supreme Court in *Johnson v. State* held that potential witness tampering supports the first prong of the *Martinez* Standard.[85] The Court also finds that the time period in the March 2023 Subpoenas also meets the *Martinez* Standard. Again, as the Supreme Court held in *Johnson*, "[i]t was reasonable to require the production of all letters that Johnson sent during the entirety of his incarceration pending trial in order to ascertain whether he had contact with [the witness] either directly or indirectly."[86] The same is true here.

---

[84]     *Id.* at 7, ¶¶5-7.

[85]     *Johnson v. State*, 983 A.2d 904, 921 (Del. 2009) (holding that potential witness tampering met the first prong of *Martinez*).

[86]     *Id.* at 922.

**Late Disclosure of DOC Records**

Defendant argues that because the DOC records were not disclosed in a timely manner, all DOC records must be excluded. The Court notes that the January 2023 through March 2023 DOC records were sent to defense counsel on March 17, 2023. On April 7, 2023, the State provided additional discovery from January 2022 to defense counsel. The Court focuses this decision on the records sent on March 17, 2023, as the records received on April 7, 2023 are subject to Defendant's Motion to Dismiss for Prosecutorial Misconduct, which is not a part of this decision.

The Court will not exclude the DOC records sent to the defense on March 17, 2023 due to their late disclosure. As indicated in the State's Response, the State only sent subpoenas to the DOC in March 2023 after Bethea indicated she did not wish to have anything to do with this trial and that she would not testify voluntarily. It appears the State then promptly turned these records over to the defense. Therefore, any prejudice to the defense is minimal, especially in light of the fact that the State only recently received the records as well.

III. **Defendant's Motion to Exclude All Evidence Obtained from Deona Bethea's Cell Phone**

The alleged incident in this case occurred on June 25, 2020. On that same date, the State downloaded Bethea's cell phone and obtained 55,518 pages worth of evidence.

26

On October 21, 2020, prior counsel for Defendant sent a discovery letter to the State requesting, among other things, "[a]ny books, papers, documents, photographs, tangible objects, buildings or places, which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at trial, or were obtained from or belong to the defendant."[87]

On February 16, 2022,[88] the State provided certain discovery to Defendant, including the Wilmington Police Report dated April 13, 2021 (the "Police Report") related to the June 25, 2020 incident.[89] The Police Report listed as physical evidence a "Signed Consent to Search Form for Deona Bethea's cellular phone, signed by Bethea" along with "Phone Extractions." Included in the Police Report are text messages exchanged between the Defendant and Bethea, including dates and time stamps. None of the 55,518 pages of evidence from Bethea's phone, including text messages, were provided to the defense until March 10, 2023.

---

[87] April 6, 2023 Supplemental Letter to the Court from Ross A. Flockerzie and Alexandria M. Shaffer, Exhibit B.

[88] The Court set April 21, 2021 as the discovery deadline in this matter.

[89] *See* Wilmington Police Department complaint #30-20-53253, and includes: Supplemental police report by Detective Kane, Redacted Supplemental police report by Corporal Santana, Supplemental police report by Detective Kane and Redacted Supplemental police report by Detective Kane.

Defendant argues that the entire extraction from Bethea's cell phone should be excluded.[90] According to Defendant, a discovery violation has occurred, and therefore the only proper remedy is to exclude the evidence from Bethea's cell phone in its entirety.[91] The State argues that because Defendant did not specifically request the cell phone extraction, it was not obligated to provide it to Defendant.[92] The State also argues that Defendant has had the relevant text messages at issue, even though it was in a different format, because the verbatim text messages were included in Detective Kane's police report provided to Defendant on February 16, 2022.[93]

## All Evidence from Bethea's Cell Phone, Except the Text Messages from the Police Report, are Excluded

Superior Court Criminal Rule 16(a)(1)(C) requires the State to permit the defendant to examine "books, papers, documents, photographs, tangible objects, buildings or places," provided that they "are within the possession, custody or control of the [S]tate" and are either (1) "material to the preparation of the defense," (2) "intended for use by the [S]tate as evidence in chief at the trial," or (3) "were

---

[90] Defendant's Motion to Exclude All Evidence Obtained from Deona Bethea's Cell Phone (April 5, 2023).

[91] *Id.*

[92] State's Letter Response to Defendant's Motion to Exclude (April 8, 2023).

[93] *Id.* at 2.

obtained from or belong to the defendant."[94] Under this rule, the State has an obligation to look for discoverable evidence and a continuing responsibility to disclose the existence of such evidence.[95] Rule 16(d)(3)(B) requires the State to respond to a discovery request served upon it within twenty days after service of the request unless some other time is ordered by the Court.[96]

In evaluating discovery violations, the Court is required to engage in a two-step inquiry. First, the Court must determine if a violation of Superior Court Criminal Rule 16 occurred.[97] If no violation occurred, the Court will end its inquiry.[98] If, however, the Court concludes a discovery violation has occurred, the Court will apply the following three-factor test considering: "(1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of the error."[99]

The Court finds that a discovery violation occurred because the State did not provide Bethea's cell phone extraction – containing 55,518 pages that the State has

---

[94] Del. Super. Ct. Crim. R. 16(a)(1)(C).

[95] *Patterson v. State*, 276 A.3d 1055, at *4 (Del. 2022) (TABLE).

[96] Del. Super. Ct. Crim. R. 16(d)(3)(B).

[97] *Wharton v. State*, 246 A.3d 110, 116 (Del. 2021) (citation omitted).

[98] *Wright v. State*, 25 A.3d 747, 753 (Del. 2011).

[99] *Oliver v. State*, 60 A.3d 1093, 1096-97 (Del. 2013).

had in its possession for nearly three years – until a month prior to trial. The Court will therefore apply the three-factor test to the facts of this case. Here, the error is central to this case – the cell phone extraction at issue is from one of the alleged victims. This is also a close case. From the voluminous filings over the past few days, the Court can infer that Bethea is a key witness, and her testimony is central to the case. Defendant has indicated that there is no DNA evidence, no fingerprint evidence, no confession, no firearm, and no cell site location data.[100] Finally, it does not appear to the Court that the State took any steps to mitigate the error, other than dumping tens of thousands of pages of a cell phone approximately three weeks prior to trial.

The Court finds that the appropriate remedy here is to exclude the entire extraction from Bethea's cell phone, except for the text messages contained in Detective Kane's Police Report. Defendant will not be prejudiced by the inclusion of the text messages from the Police Report in evidence because the defense has been in possession of the exact contents of the messages since May 2022. If the defense uses any documents from Bethea's cell phone in his case (other than the text

---

[100]    *See* Defendant's Motion to Dismiss for Prosecutorial Misconduct (April 7, 2023) at 2.

messages from the Police Report), the Court will consider to what extent the State may use the excluded documents in rebuttal during trial.[101]

## IV.    Deona Bethea's Police Interview Transcript

On April 6, 2023, in a conference with the Court during a break from jury selection, the parties discussed potential redactions to Bethea's June 25, 2020 statement to Detective Kane (the "3507 Statement").  At issue here is a back-and-forth between Detective Kane and Bethea, where Bethea recounts a text exchange she purportedly had with the Defendant the day of the incident.[102]  The Court gave both parties an opportunity to supplement the record with case law on the issue, but only Defendant chose to make a submission.[103]

The Court will not discuss the requirements of 11 *Del. C.* § 3507, as the only issue currently before the Court is whether Bethea's recounting of her text exchange

---

[101]    *See State v. McGuinness*, 2022 WL 1580601, at * (Del. Super. May 18, 2022) (balancing the appropriate sanction for a discovery violation of failing to produce evidence timely).

[102]    *See* Interview of Deona B[e]thea, dated June 25, 2020 at 4:16-6:20.

[103]    *See* Defendant's Letter re: 3507 Statement (April 7, 2023).  On Sunday, April 9, 2023, the Court inquired whether the State intended to make a submission, since the Court had ordered the parties submit any case law by April 8, 2023.  The State wrote to the Court that it "will submit nothing more on the[] 3507 issue, other than it recounts statements by a party opponent and the conversation lends context for what transpires later."  *See* email from John Downs, Esquire, to the Court, dated April 9, 2023 at 5:21 p.m.

31

with Defendant constitutes hearsay. Hearsay is a statement that: "(1) [t]he declarant does not make while testifying at the current trial or hearing; and (2) [a] party offers in evidence to prove the truth of the matter asserted in the statement."[104] Hearsay is "not admissible except as provided by law or by these Rules."[105]

The State argued during the conference with the Court on April 6, 2023 that the State is not offering the 3507 Statement for the truth of the matter asserted, and it is therefore not hearsay. Defense counters in its letter to the Court that "Ms. Bethea testifying on the witness stand about what Ms. Bethea said in a [text] message is hearsay," because "[i]t is an out of court statement offered for the truth of the matter asserted.[106]

The Court finds that Bethea's Section 3507 Statement telling Detective Kane what Defendant told her is not hearsay, as it is not being offered for the truth of the matter asserted. "Where the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the

---

[104]    D.R.E. 801(c).

[105]    D.R.E. 802.

[106]    Defendant's April 7, 2023 Letter to the Court at 4. Defendant states that the message is a social media message, but upon the Court's review of the transcript, the message at issue appears to be a text message. Whether the message is a text message or social media message does not change the Court's analysis.

statement is not hearsay."[107]  Here, the statements were made in a context of a police

interview discussing the events of that night, and Bethea was discussing the fact that

she and Defendant were exchanging text messages.  The State is not seeking to admit

the statements for their truth, but rather that the conversation occurred.  Therefore,

this specific portion of Bethea's Section 3507 Statement is not hearsay and will not

be excluded.[108]

---

[107]  *Edwards v. State*, 925 A.2d 1281, 1285-86 (Del. 2007) (internal citations and quotations omitted).

[108]  *Id.* Even if the 3507 could be considered hearsay, Defendant's statements to Bethea are admissible as an admission by a party-opponent under D.R.E. 801(2)(A). The Supreme Court of Delaware in *Flonnory v. State* held that a witness's 3507 statement, recounting what the defendant told him, was admissible even though it was double hearsay as an admission by a party-opponent.  893 A.2d 507, 512 (Del. 2006).  The same is true here.  As such, the relevant portions of Bethea's Section 3507 Statement will not be excluded if the statement ends up being used at trial. This ruling, of course, does not relieve the State of its burden of properly offering Bethea's Section 3507 Statement into evidence.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress and/or Exclude Evidence from Defendant's Cell Phone is GRANTED; Defendant's Motion to Suppress and/or Exclude Defendant's Department of Correction Communications is DENIED; Defendant's Motion to Exclude All Evidence Obtained from Deona Bethea's Cell Phone is GRANTED, in part; and Defendant's Motion to Exclude Certain § 3507 Statements as Hearsay is DENIED.

**IT IS SO ORDERED.**

*/s/  Meghan A. Adams*
**Meghan A. Adams, Judge**